UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SAINT-GOBAIN CORPORATION,

    Plaintiff,

v                                           Case No. 1:04 cv 387

GEMTRON CORPORATION,              Hon. Wendell A. Miles

    Defendant.
_____/


OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

       In this action, plaintiff Saint-Gobain Corporation seeks a declaratory judgment that it did not infringe two patents owned by defendant, Gemtron Corporation. Alternatively, Saint-Gobain seeks a declaratory judgment that the patents are invalid. Gemtron has asserted counterclaims against Saint-Gobain alleging infringement of the Gemtron patents.

       The case is currently before the court on the following motions for summary judgment filed by both parties: (1) plaintiff Saint-Gobain's Motion for Summary Judgment of Non-Infringement of the '673 and '573 patents (docket no. 34), and (2) defendant Gemtron Corporation's Motion for Summary Judgment as to Infringement (docket no. 39).

       For the reasons to follow, the court DENIES both motions.


**I**

       Gemtron is the owner of United States Patent Nos. 6,422,673 ("the '673 patent") and 6,679,573 ("the '573 patent") (collectively "the patents" or "both patents"). The '673 patent,

issued on July 23, 2002, is directed to a "REFRIGERATOR COMPARTMENT HOUSING VERTICALLY ADJUSTABLE SHELVES, EACH FORMED FROM A PIECE OF TEMPERED GLASS SNAPPED-FASTENED TO AN INJECTION MOLDED FRAME."  The '573 patent, issued on January 20, 2004, is, in contrast, directed merely to a "REFRIGERATOR SHELF."  The '573 patent is directed to a refrigerator shelf composed of a frame made of molded synthetic material enclosing a snap-in glass panel, while the '673 patent is directed to a refrigerator compartment having such shelves, which are both supported and held in place by ribs or ledges and are adjustable within the refrigerator.  The shelf itself may or may not include a bond or adhesive used between the frame and the glass.

In its pleadings, Gemtron accuses Saint-Gobain of infringing both patents.  Specifically, Gemtron alleges that Saint-Gobain has been infringing and continues to infringe the patents by making, using, offering to sell, or importing into the United States refrigerator shelves which incorporate the inventions claimed in the patents.  Amended Answer and Counterclaim at 4, ¶ 8.

The '573 patent, directed to the refrigerator shelf, has three independent claims:  claims 1, 23, and 31.  Claim 23 of the '573 patent is directed to the following:

> **23.** A refrigerator shelf comprising a one-piece open frame made of substantially homogeneous polymeric/ copolymeric molded synthetic material and a piece of glass closing an opening defined by said frame; said open frame having opposite substantially parallel side frame portions and opposite substantially parallel front and rear frame portions; said glass piece having opposite substantially parallel side edges and opposite substantially parallel front and rear edges; said side, front and rear frame portions being substantially contiguous to said respective side, front and rear edges; each of said side frame portions being defined by an upper wall, a side wall depending from each upper wall and a lower wall projecting from its side wall toward an opposite side wall with the opposing lower walls being spaced from each other and each defining with an associated upper wall a glass piece side edge-receiving channel, each upper wall and lower wall having a

terminal free edge, said glass piece side edges being spaced a predetermined distance from each other, said upper wall terminal free edges being spaced a predetermined distance from each other, said lower wall terminal free edges being spaced a predetermined distance from each other, the predetermined distance of the glass piece side edges being appreciably greater than the predetermined distance of said upper wall edges and only slightly greater than the predetermined distance between said lower wall terminal free edges whereby said glass piece side edges are captively retained in said glass piece side edge-receiving channels, and at least one lower wall of at least one of said front and rear frame portions including a *relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap-secure* one of said glass piece front and rear edges in the glass piece edge-receiving channel of said at least one front and rear frame portion.

'573 Patent, col. 8 (emphasis supplied). Claims 24 through 30 of the '573 patent are dependent claims, depended upon claim 23. The phrase "*relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap-secure*" also appears in claims of the '673 patent, directed to the refrigerator compartment housing the shelves.

On October 3, 2005, the court issued its Order on Claim Construction (docket no. 113) interpreting the relevant claim language "*relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap-secure.*" The court concluded that the claim language has the following meaning: the end edge portion is sufficiently resilient that it can temporarily deflect and subsequently rebound when glass is being inserted into the frame.

## II

In this action, Saint-Gobain has denied any infringement and maintains that the patents are invalid. However, neither party's motion raises the issue of invalidity of the patents.[1] Instead, in

---

[1]Gemtron's patents are presumed to be valid. 35 U.S.C. § 282; Lisle Corp. v. A.J. Mfg. Co., 398 F.3d 1306, 1313 (Fed. Cir. 2005). The party attacking the patent bears the burden of
(continued...)

its motion Saint-Gobain argues the court is presented only with "the narrow legal issue of whether a product's temporary state during manufacture outside the United States is sufficient to prove infringement." Memorandum in Support of Saint Gobain's Motion for Summary Judgment of Non-Infringement of the '673 and '573 Patents" at 1. According to Saint-Gobain, this is an issue of law which presents no factual dispute and should be resolved on summary judgment. In contrast, for its motion, Gemtron argues that it is entitled to summary judgment as to infringement of "at least claims 23-30 of the '573 Patent." Gemtron Corporation's Memorandum in Support of Its Motion for Summary Judgment as to Infringement, at 1. According to Gemtron, the court "is faced with the narrow legal issue of whether Saint-Gobain's refrigerator shelves, when imported into the United States, meet the limitations set forth in the claims" of the patents. Id. The court construes the parties' motions as seeking partial summary judgment on the issue of infringement.

"As in other cases, the grant of summary judgment under Fed.R.Civ.P. 56, is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." Becton Dickinson and Co. v. C.R. Bard, Inc., 922 F.2d 792, 795 (Fed. Cir. 1990) (footnote omitted). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552 (1986). In evaluating a motion for summary judgment, the

---

[1](...continued)
proving invalidity by clear and convincing evidence. Iron Grip Barbell Co., Inc. v. USA Sports, Inc., 392 F.3d 1317, 1320 (Fed. Cir. 2004); AK Steel Corp. v. Sollac and Ugine, 344 F.3d 1234, 1238-1239 (Fed. Cir. 2003).

court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512 (1986).

Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356 (1986). However, while inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Id., 475 U.S. at 586, 106 S.Ct. at 1356. The applicable substantive law governing the issue determines what facts are relevant; only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are deemed "material." Anderson, 477 U.S. at 248.

Summary judgment is not necessarily appropriate solely because parties file cross-motions for summary judgment. B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001). "The fact that both parties make motions for summary judgment, and each contends in support of [its] respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists." Begnaud v. White, 170 F.2d 323, 327 (6th Cir. 1948). "[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most

favorable to the nonmoving party." Wiley v. United States, 20 F.3d 222, 224 (6th Cir. 1994).[2]

## III

An analysis of whether a patent is infringed involves a two-step determination: (1) determining the meaning and scope of the patent claims allegedly infringed, and (2) comparing the properly construed claims to the accused device. Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998); Markman v. Westview Instruments, 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 S.Ct. 1384 (1996). "[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." Markman, 52 F.3d at 970-971. Infringement, in contrast, is a question of fact. Pause Technology, LLC v. TiVo, Inc., 419 F.3d 1326, 1329 (Fed. Cir. 2005); Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002). "Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim." Catalina Marketing, 289 F.3d at 812.

The court's Order on Claim Construction interpreted the relevant claim language – "*relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap-secure*" – as follows: the end edge portion is sufficiently resilient that it can temporarily deflect and subsequently rebound when glass is being inserted into the frame. The question presented by the current motions is whether, based on this construction, a genuine issue of fact

---

[2]"The Federal Circuit follows the discernable law of the regional circuit in procedural matters that are not unique to patent law." Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc., 45 F.3d 1550, 1560 n.3 (Fed. Cir. 1995). "Thus, for general procedure and practice under Rule 56" the federal circuit, which presides over patent appeals from the district courts, looks to the relevant circuit precedent for guidance. Id.

remains regarding whether Saint-Gobain has infringed the patents.

Saint-Gobain's motion is based on the premise that Gemtron claims only that Saint-Gobain's shelves infringe the patents based on a "temporary" characteristic of the shelves which exists solely during Saint-Gobain's manufacturing process, which takes place in Mexico. Although Saint-Gobain disagrees that its shelves ever have the "relatively resilient" characteristic, Saint-Gobain accepts the temporary presence of this characteristic for purposes of its motion.

However, the premise of Saint-Gobain's motion is a false one. Gemtron does allege that Saint-Gobain's shelves, as imported, meet the "relatively resilient" claim limitation. Therefore, the key issue is whether Saint-Gobain's shelves, *as imported into the United States*, meet the limitations of the patent claims, which are product claims.[3] Saint-Gobain's manufacturing process is not at issue either in the claims or counterclaims. Therefore, the case of Warner-Lambert Co. v. Purepac Pharmaceutical Co., 68 U.S.P.Q.2d 1686 (D.N.J. 2003), the sole authority on which Saint-Gobain relies for the substance of its motion, does not support Saint-Gobain's argument that it is entitled to summary judgment as a matter of law.[4]

---

[3]Both of the patents at issue are product patents, as distinguished from process patents, and the parties do not dispute that the claims of the patents are product claims. Gemtron contends that the "relatively resilient" term used in its claims describes a physical characteristic of its products, and does not turn the claims into product-by-process claims. Gemtron Corporation's Memorandum in Support of its Motion for Summary Judgment as to Infringement at 5 n.4. Saint-Gobain has conceded that the claims of the patents are product claims. Memorandum in Support of Saint Gobain's Motion for Summary Judgment of Non-Infringement of the '673 and '573 Patents at 4.

[4]Saint-Gobain argues that Warner-Lambert Co. v. Purepac Pharmaceutical Co., 68 U.S.P.Q.2d (BNA) 1686 (D.N.J. 2003), is "directly on point[.]" Memorandum in Support of Saint Gobain's Motion for Summary Judgment of Non-Infringement of the '673 and '573 Patents at 4. However, in that case, although both a product and a process for producing it were initially at issue, the patent holder subsequently renounced its infringement claims implicating the
(continued...)

By the same token, however, Gemtron has likewise failed to establish that no genuine issue remains regarding whether one or more of the lower walls of Saint-Gobain's shelves, as imported into the United States, includes a "relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap-secure said glass piece side edges in said glass piece side edge-receiving channels."  In support of its motion, Gemtron relies largely on observations made by an expert witness, Greg Miedema, who viewed Saint-Gobain's production process in Mexico.  According to the declaration of Mr. Miedema (attached as Appendix A to Gemtron Corporation's Memorandum in Support of its Motion for Summary Judgment as to Infringement), he "personally witnessed the snapping of glass into refrigerator shelf frames during the Mexico visit."  Declaration of Greg Miedema at 1, ¶ 2.  However, because the patent claims at issue are undisputedly product claims, and not process claims, Gemtron's reliance on observations made during Saint-Gobain's production process is misguided.  Evidence which details these observations does not show that Gemtron has shown infringement as a matter of law based on characteristics of Saint-Gobain's shelves as imported into the United States.

Mr. Miedema also states that he has inspected four of Saint-Gobain's refrigerator shelves imported into the United States, and he has determined that three of them have frames in which the end edge portion of at least one of the lower walls is "relatively resilient" at "manufacturing temperatures."  Id. at 2, ¶ 5.  He characterizes the thermoplastic material of which they are made as "flexible" "at room temperature and elevated temperatures."  Id., ¶ 6.  (The affidavit does not

---

[4](...continued)
defendant's product and instead claimed, as its theory of infringement, that the defendant's product could "pass through" the patented form during the production process.  Id. at 1687-1688.  The Warner-Lambert case is therefore not at all on point, and Saint-Gobain reliance on it is severely misguided.

make any mention of refrigerated temperatures.)  What Mr. Miedema does not say is whether he tested the frames of the Saint-Gobain shelves to determine the validity of his opinions and conclusions as to the resiliency of the end edge portions of the lower walls.  His affidavit implies that he did not perform such testing.  Although he states that he performed an unspecified "thermal analysis" of the frames, id., ¶ 5, he also states that when the Saint-Gobain shelves reach the United States, "the glass is already snap-secured to the shelf frame" and that "[o]ne *can* show that [the flexibility] is still present in the United States by removing the glass and snap-securing another piece into the one-piece frame" Id., ¶ 9 (emphasis supplied).  Mr. Miedema does not say that he *actually* performed such a test, i.e., removing the glass of Saint-Gobain's shelf imported into the United States and snap-securing another piece of glass into the frame.

Saint-Gobain's has submitted the affidavit of its own expert, Dr. Alan McDonald.  Appendix 2, Saint-Gobain's Memorandum in Opposition to Gemtron's Motion for Summary Judgment as to Infringement (Declaration of Dr. Alan T. McDonald).  Dr. McDonald has performed his own testing of Saint-Gobain's shelves.  He describes his testing as follows:

> I tested each Saint-Gobain SG1, SG2 and SG3 shelf, without glue, by inserting each shelf into a refrigerator compartment in which the sidewall ribs did not support or constrain the end edge portions of the glass.  Weights were progressively added to each shelf and the end edge portions did not deflect and continued to support the glass.  The tests concluded when the frame or glass broke.  None of the SG1, SG2 or SG3 frames or glass failed below 75 kilograms (165 lbs).  These results further show that Saint-Gobain's SG1, SG2 and SG3 shelves do not have 'a relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap-secure' the glass into the shelf frame or an end edge portion that is 'relatively resilient.'

Declaration of Dr. Alan T. McDonald at 3, ¶15.  Dr. McDonald has therefore performed weight tests on the shelves, but he has not indicated whether he has performed his own "snap-secure" tests using the shelf frames as they are imported into the United States.   Much of Dr. McDonald's

9

affidavit is devoted to merely contradicting what Gemtron has argued in support of its motion. Dr. McDonald, who states that he (like Mr. Miedema) has viewed Saint-Gobain's manufacturing process, states that Saint-Gobain does not "snap-secure" glass into the frames of its shelves; instead, he states, the shelves are manufactured by "shrink cooling" or a "shrink-to-fit" process, in which the material used in the frame is heated and, as it cools, shrinks around the glass. Id. at 1-2, ¶ 5. In contrast with the opinion of Mr. Miedema, Dr. McDonald opines that the Saint-Gobain shelves do not have an end edge portion that it "relatively resilient."

The parties' experts therefore disagree with one another. However, on summary judgment, the court may not weigh the credibility of competing expert reports, as this amounts to inappropriate fact-finding. Phillips v. Cohen, 400 F.3d 388, 399-400 (6th Cir. 2005). Rule 56 does not authorize trial by affidavits. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.

However, even though the parties' expert affidavits contain conflicting statements, the court is not convinced that this presents a classic battle of the experts. Mr. Miedema's affidavit is highly conclusory, insofar as he does not explain how he determined that the Saint-Gobain shelves do or do not have the "relatively resilient" characteristic. The law is clear that an expert affidavit which is entirely conclusory and unsupported by specific data is insufficient to create a genuine issue of fact. Williams v. Ford Motor Co., 187 F.3d 533, 543 (6th Cir. 1999). A conclusory expert affidavit is likewise insufficient to negate the existence of a genuine issue for trial. Conclusory statements contained in such affidavits can neither support nor negate the existence of a genuine issue of fact.

>Fed.R.Evid. 702, as amended, provides as follows:
>
>If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 obligates the court to ensure that any and all scientific testimony or evidence is both reliable and relevant.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 2795 (1993).  This "gatekeeping" role requires the court to evaluate the relevance and reliability of all expert testimony, whether based on scientific, technical, or other specialized knowledge.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 147, 119 S.Ct. 1167, 1171, 1174 (1999).  Here, the court is concerned both with reliability and relevance, and, specifically, "fit" or "helpfulness."  See Daubert, 509 U.S. at 591-592, 113 S.Ct. at 2796 ("'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. . . . Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility").

Although Fed.R.Evid. 702 was amended after Daubert and Kumho Tire were decided, "[t]he amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony." Fed.R.Evid. 702 advisory committee's note.  As amended, Rule 702 "provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful."  Id.  The requirements of Rule 702 come into play where the parties submit supporting or opposing expert affidavits in connection with a motion for summary

11

judgment, for Fed.R.Civ.P. 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated therein" (emphasis supplied).  Here, neither party's expert affidavit provides sufficient supporting facts substantiating their conclusions regarding the degree of resilience of Saint-Gobain's imported shelves.

What is even more fatal to the parties' respective positions on Gemtron's motion is not so much that their experts disagree, or even that the experts' affidavits are conclusory, but instead that neither party has adequately addressed a critical issue.  In a supplemental brief which it has filed in support of its motion, Gemtron states that "[a]ll that is important is that once removed, another piece [of glass] can be snap-fitted into the [Saint-Gobain] frame to demonstrate that the end edge portions retain the same resiliency they had in Mexico."  Gemtron's Written Argument in Support of Summary Judgment of Infringement at 6.[5]   Although the court does not agree that resiliency at the time of manufacture in Mexico is important, the court agrees with Gemtron's characterization of the importance of whether another piece of glass can be snap-fitted into Saint-Gobain's frame as imported into the United States.  However, neither party has adequately

---

[5]Saint-Gobain has objected to Gemtron's filing of this supplemental brief, arguing that it should be stricken because it was filed without leave of court and after Gemtron had declined to argue summary judgment issues when the court offered the parties the opportunity to do so at the *Markman* hearing.  Saint-Gobain's Response to Gemtron's July 22 Further Argument at 1.  In reply, Gemtron has filed yet another brief in which it argues that the court "specifically ordered the parties to file written arguments within two weeks of that hearing[.]"

Both summary judgment motions were fully briefed before the *Markman* hearing.  The court did not *order* the parties to file additional briefs on the motions, but instead gave them the opportunity to do so within a certain time period.  Both parties have taken advantage of this opportunity.  The court has therefore considered all briefs filed by the parties.

addressed this factor in order to either negate or support the existence of a genuine issue for trial.

The court understands that the Saint-Gobain shelves, as imported into the United States, already have the glass inserted, and that it would be necessary to remove the glass from the frame by some means in order to determine whether the frame (or some portion of it) is sufficiently resilient that the glass (or another identical piece of glass) could be re-inserted or "snap-secured" into the frame. Either neither party has performed such testing, or they have performed it but have not shared the results with the court. Although Gemtron bears the ultimate burden of establishing infringement of the patents, each party must show, in support of its motion, that no genuine issue remains for trial on the fact question of infringement. Neither party has done so.

Saint-Gobain has submitted two exemplars of one of its shelves, one with adhesive and one without. According to Saint-Gobain, the shelf speaks for itself. Saint-Gobain argues that Gemtron's assertions about the "relatively resilient" nature of the allegedly offending products are "flatly disproved, without creating any factual issue, by the Saint-Gobain shelf itself in which even a cursory examination reveals that the fingers are rigid, are not resilient and are not able to temporarily deflect and subsequently rebound." Reply in Support of Saint-Gobain's Motion for Summary Judgment of Non-Infringement of the '673 and '573 Patents at 2-3. Saint-Gobain also invites the court to "manually press upon the fingers and the glass to see for itself that the fingers are rigid and not resilient and that such pressure will not cause any of the fingers to temporarily deflect and subsequently rebound." Id. at 3.

However, resolution of the issue of infringement in this case is not as easy as merely applying pressure to one of Saint-Gobain's shelves – either with or without adhesive – with the glass already inserted. In its Order on Claim Construction, the court interpreted the relevant claim

13

language "*relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap-secure*" as meaning that the end edge portion is sufficiently resilient that it can temporarily deflect and subsequently rebound *when glass is being inserted into the frame*. The question is therefore not one of rigidity or resilience per se, but instead *relative resilience* determined by whether the end edge portion of the frame can deflect and rebound when glass is inserted into the frame  The court cannot feel the answer to this question by manually pressing on a frame into which glass has already been inserted.  Moreover, the court is not equipped to perform its own testing or experimentation; that is the parties' responsibility.

Although Gemtron's motion is principally based on the deficient contents of its expert affidavit, Gemtron also relies in part on patent applications filed by Saint-Gobain covering the latter's own shelves.  Gemtron argues that Saint-Gobain's applications "virtually copied, word-for-word, the claims of the '573 Patent."  Gemtron Corporation's Memorandum in Support of Its Motion for Summary Judgment as to Infringement at 3 n.1.  Gemtron argues that Saint-Gobain's patent applications "refer to the manufacturing process and, specifically, the assembly of the glass piece and frame as 'clipping' (snap-securing) of the glass piece into the frame."  Gemtron's Reply to Saint-Gobain's Memorandum in Opposition to Gemtron's Motion for Summary Judgment as to Infringement at 4.  "Thus," Gemtron further argues, "it can be seen that Saint-Gobain's glass piece (panel) is snap-secured (clipped) into the shelf frame (structure) by the insertion of the glass piece, by force (pressing), past fingers in the shelf frame (lugs or tabs or tongues)." Id. at 5.  Therefore, according to Gemtron,

> Saint-Gobain's assertion that its shelves are shrink-to-fit and not snap-secured is contradicted by Saint-Gobain's own documents.  Simply put, a shrink-to-fit shelf would not require the insertion of the glass piece by force (pressing) into the shelf frame.

14

Id.

The court agrees that the contents of Saint-Gobain's patent applications provide some evidence of potential infringement. However, this evidence of what Saint-Gobain claims as its own invention is not sufficient to justify entry of summary judgment in favor of Gemtron. The evidence presented does not unmistakably favor Gemtron's claim of infringement of claims 23 through 30 of the '573 patent, and it does not show that Saint-Gobain's defenses have no factual basis.

## CONCLUSION

Saint-Gobain's motion is falsely based on the premise that Gemtron alleges infringement of the patents based only on a "temporary" characteristic of Saint-Gobain's shelves during the manufacturing process in Mexico. Gemtron, in turn, has simply not properly supported its motion for a ruling as a matter of law that Saint-Gobain has infringed claims 23 through 30 of the '573 patent. The court therefore denies both motions for summary judgment.

So ordered this 24th day of October, 2005.

/s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge