UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SAINT-GOBAIN CORPORATION,

      Plaintiff,                               Case No. 1:04-cv-387

v                                             Hon. Wendell A. Miles

GEMTRON CORPORATION,

      Defendant.
_____/


OPINION AND ORDER
ON  PARTIES' RENEWED MOTIONS FOR PARTIAL SUMMARY JUDGMENT


      At issue in this action are two patents owned by defendant, Gemtron Corporation.

Currently before the court are the following motions for summary judgment filed by both parties:

(1) "Plaintiff Saint-Gobain's Motion for Summary Judgment of Non-Infringement Based Upon

the Test Set Forth in the Court's October 24, 2005 Opinion and Order on Motions for Summary

Judgment" (docket no. 145), and (2) "Gemtron Corporation's Second Motion for Summary

Judgment as to Infringement" (docket no. 157).[1]

      For the reasons to follow, the court **DENIES** Saint-Gobain's motion and **GRANTS**

---

      [1]Saint-Gobain has filed a separate "Motion for Oral Argument" (docket no. 227) on both
parties' motions.  Gemtron has opposed the scheduling of oral argument on the motions.
      In this district, requests for oral argument are not made by separate motion.  This court's
local rules provide that any party desiring oral argument with respect to a dispositive motion
shall include a request in the caption and heading of its brief and that the court, in its discretion,
may either schedule oral argument or dispose of the motion at the end of the briefing schedule.
W.D. Mich. L. Civ. R. 7.2(d).  At this point, both motions have been fully briefed and the court
has determined that oral argument will not materially aid the court in its resolution of the
motions.

Gemtron's motion.

# I

Gemtron is the owner of United States Patent Nos. 6,422,673 ("the '673 patent") and 6,679,573 ("the '573 patent") (collectively "the patents" or "both patents"). The '673 patent, issued on July 23, 2002, is directed to a "REFRIGERATOR COMPARTMENT HOUSING VERTICALLY ADJUSTABLE SHELVES, EACH FORMED FROM A PIECE OF TEMPERED GLASS SNAPPED-FASTENED TO AN INJECTION MOLDED FRAME." The '573 patent, issued on January 20, 2004, is, in contrast, directed merely to a "REFRIGERATOR SHELF." To put it more simply, the '673 patent is directed to a refrigerator compartment having adjustable shelves both supported and held in place by ribs or ledges, while the '573 patent is directed to the refrigerator shelf itself, which is composed of a frame made of molded synthetic material enclosing a snap-in glass panel.

In its Amended Complaint (docket no. 238), Saint-Gobain seeks a declaratory judgment of non-infringement and invalidity of both patents. Saint-Gobain has also asserted claims of unfair competition and antitrust violations against Gemtron. In its Counterclaim, Gemtron accuses Saint-Gobain of infringing both patents by manufacturing, using, importing into the United States, and selling refrigerator shelves which incorporate the inventions claimed in the patents. Answer, Affirmative Defenses, and Counterclaim to Amended Complaint (docket no. 251) at 6.

On October 3, 2005, the court issued an Order on Claim Construction (docket no. 113) interpreting the relevant claim language "*relatively resilient end edge portion which temporarily*

*deflects and subsequently rebounds to snap-secure.*"   The court concluded that the claim

language has the following meaning:  **the end edge portion is sufficiently resilient that it can**

**temporarily deflect and subsequently rebound when glass is being inserted into the frame.**

Previously, the court also denied motions for summary judgment filed by the parties.  Opinion

and Order on Motions for Summary Judgment (docket no. 123).   In denying the parties'

motions, the court noted that neither party had adequately addressed a critical issue, namely,

whether glass could be snap-fitted into Saint-Gobain's frame as imported into the United States.

Because the Saint-Gobain shelves, as imported into the United States, already have the glass

inserted, the court concluded that it would be necessary to remove the glass in order to perform

testing to determine whether the frame (or some portion of it) was sufficiently resilient that the

glass (or another identical piece of glass) could be re-inserted or "snap-secured" into the frame.

The court denied the motions because the parties had not provided evidence of the results of such

testing.


## II

In this action, Saint-Gobain has both denied any infringement and maintained that the

patents are invalid.  However, neither party's motion raises the issue of the validity or invalidity

of the patents at the present time.[2]  In its motion, Saint-Gobain instead seeks "summary judgment

---

[2]Gemtron's patents are presumed to be valid.  35 U.S.C. § 282; Lisle Corp. v. A.J. Mfg. Co., 398 F.3d 1306, 1313 (Fed. Cir. 2005).  The party attacking the patent bears the burden of proving invalidity by clear and convincing evidence.  Iron Grip Barbell Co., Inc. v. USA Sports, Inc., 392 F.3d 1317, 1320 (Fed. Cir. 2004); AK Steel Corp. v. Sollac and Ugine, 344 F.3d 1234, 1238-1239 (Fed. Cir. 2003).  However, patent infringement and patent validity are treated as separate issues.  Pandrol USA, LP v. Airboss Rwy. Prod., Inc., 320 F.3d 1354, 1364 (Fed. Cir.

(continued...)

of non-infringement based upon the test set forth" in the court's previous order denying the parties' original motions for summary judgment.  In its motion, Gemtron seeks summary judgment in its favor on the issue of whether Saint-Gobain's SGI, SG2, and SG3 refrigerator shelves infringe claims 23-30 of Gemtron's '573 patent.

"As in other cases, the grant of summary judgment under Fed.R.Civ.P. 56, is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." Becton Dickinson and Co. v. C.R. Bard, Inc., 922 F.2d 792, 795 (Fed. Cir. 1990) (footnote omitted). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552 (1986).  In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512 (1986).

Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356 (1986).  However, while inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the

---

[2](...continued)
2003).  "Though an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity." Medtronic, Inc. v. Cardiac Pacemakers, Inc., 721 F.2d 1563, 1583 (Fed. Cir. 1983).

motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Id., 475 U.S. at 586, 106 S.Ct. at 1356.   The applicable substantive law governing the issue determines what facts are relevant; only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are deemed "material."  Anderson, 477 U.S. at 248.

## III

An analysis of whether a patent is infringed involves a two-step determination: (1) determining the meaning and scope of the patent claims allegedly infringed, and (2) comparing the properly construed claims to the accused device.  Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998); Markman v. Westview Instruments, 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 S.Ct. 1384 (1996).  "[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court."  Markman, 52 F.3d at 970-971.  Infringement, in contrast, is a question of fact.  Pause Technology, LLC v. TiVo, Inc., 419 F.3d 1326, 1329 (Fed. Cir. 2005); Ferguson Beauregard/Logic Controls v. Mega Sys., LLC, 350 F.3d 1327, 1338 (Fed. Cir. 2003); Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002).  The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence.  SmithKline Diagnostics, Inc. v. Helena Lab. Corp., 859 F.2d 878, 889 (Fed. Cir. 1988).  In comparing a properly construed claim with the accused product, the second step of the inquiry, the patentee – here, Gemtron –  bears the burden of proving by a preponderance of the evidence that every limitation set forth in the asserted claim is found in the accused product,

either literally or by a substantial equivalent. <u>Wolverine World Wide, Inc. v. Nike, Inc.</u>, 38 F.3d 1192, 1196 (Fed. Cir. 1994).

Literal infringement requires the patentee to prove that the accused product or device contains each and every limitation set forth in the asserted claim. <u>V-Formation, Inc. v. Benetton Group SpA</u>, 401 F.3d 1307, 1312 (Fed. Cir. 2005); <u>Catalina Mktg.</u>, 289 F.3d at 812. Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." <u>Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.</u>, 520 U.S. 17, 21, 117 S.Ct. 1040, 1045 (1997). "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." <u>Aquatex Indus., Inc. v. Techniche Solutions</u>, 419 F.3d 1374, 1382 (Fed. Cir. 2005). "An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial. The analysis focuses on whether the element in the accused device 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." <u>Id</u>.

In its motion, Gemtron argues that it is clear that Saint-Gobain's refrigerator shelves have the relatively resilient end edge portion and all of the other limitations of at least claims 23-30 of the '573 patent. Gemtron argues that Saint-Gobain's shelves therefore literally infringe claims 23-30 of the patent. Although Saint-Gobain has not disputed that its shelves meet the other limitations of claims 23-30 of the '573 patent, Saint-Gobain does dispute whether its shelves have the claimed "relatively resilient" characteristic; Saint-Gobain argues that its shelves do not have the characteristic.

6

The court's Order on Claim Construction interpreted the relevant claim language – "*relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap-secure*" – as follows:  the end edge portion is sufficiently resilient that it can temporarily deflect and subsequently rebound when glass is being inserted into the frame.  The question presented by the current motions is whether, based on this construction, a genuine issue of fact remains regarding whether Saint-Gobain's shelves have the claimed characteristic.  The court concludes that no genuine issue remains and that the accused shelves do indeed have the claimed characteristic.

Each party has supported its position by submitting the affidavit of an expert.  According to Gemtron's expert, Greg Miedema, he has performed testing as a result of which he determined that it is possible to insert glass pieces for all of the SG1, SG2, and SG3 shelves by snap-securing them into the glass-receiving channel of their respective frames.  According to Saint-Gobain's expert, Dr. Henry Stoll, he has attempted to fit glass panes for each of the SG1, SG2, and SG3 shelves into the respective frames but has determined that "it is clear" that they "cannot be so fitted."

However, these affidavits do not present a "classic battle of the experts" which would require a jury to evaluate what weight and credibility each expert opinion deserves.  See Phillips v. Cohen, 400 F.3d 388, 399 (6th Cir. 2005) ("competing expert opinions present the 'classic battle of the experts' and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves") (citation omitted).  Here, there is no dispute that the experts performed their testing under different conditions, and that these different conditions account for the differing results.  Subsequent to Gemtron's submission of the Miedema affidavit, Saint-Gobain deposed

Mr. Miedema. In his testimony, Miedema admitted that he had performed his testing after he had heated the Saint-Gobain frames in an oven. As for Dr. Stoll, during his own deposition he testified that he performed his testing at "room temperature," which turned out to be the temperature of his garage during the month of October. Because the experts' affidavits are not in conflict, the court can and does assume that the information contained in both of the affidavits is true – and Saint-Gobain loses on the infringement issue as a matter of law.

Saint-Gobain argues that the Miedema test is "bogus" because it involved the application of heat to the plastic frames of the Saint-Gobain shelves. According to Saint-Gobain, the testing previously suggested by the court did not contemplate heating the frame. Moreover, according to Saint-Gobain, a test in which the shelf is heated is not a proper test of the product as it is sold and used.

Certainly, "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1555 (Fed. Cir. 1995). However, the Saint-Gobain shelves were not altered; instead, they were heated slightly, to show that the "relatively resilient" characteristic is present when the glass is inserted. The court interpreted the relevant claim language – "*relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap-secure*" – as follows: the end edge portion is sufficiently resilient that it can ***temporarily deflect and subsequently rebound when glass is being inserted*** into the frame. Thus, the relevant characteristic is defined by the patent in terms of *the time of insertion*, and not the time of actual use in a refrigerator or freezer compartment. For this reason, this case is unlike the hypothetical situation described in Bionx Implants, Inc. v. Linvatec Corp., 299 F.3d 1378,

8

1382 (Fed. Cir. 2002).

In Bionx Implants, the plaintiff held a patent for a surgical procedure to repair a torn meniscus (part of the human knee joint) and the device employed in that procedure. The plaintiff alleged that the defendant's surgical fastener and the method of using it infringed the plaintiff's patent. At issue was whether the accused device was "rigid" within the meaning of that term as used in the patent. The district court had construed the term "rigid" to require that the claimed suture be sufficiently rigid to be pushed through the meniscus tissue without a pre-cut channel for the suture to follow. 299 F.3d at 1380. In granting summary judgment in favor of the defendant, the district court discounted the plaintiff's videotaped demonstration of the accused device showing its insertion into uncut meniscal tissue through use of a cannula designed specifically for the demonstration. Citing High Tech, the district court concluded that the demonstration was insufficient to defeat summary judgment "because it ran afoul of 'the well-established rule that a device does not infringe merely because it can be altered to make it infringe.'" Bionx Implants, 299 F.3d at 1382.

The Federal Circuit panel in Bionx, however, held that the use of a cannula during the plaintiff's videotaped demonstration of the accused surgical fastener did not render the demonstration invalid on the ground that it constituted an alteration of the accused device or the context in which the rigidity of the patented device was to be judged. 299 F.3d at 1383-1384. The panel disagreed that the use of the cannula constituted an improper alteration of the accused device analogous to removal of the set screws in High Tech. 299 F.3d at 1382. Although acknowledging that "the accused device would not be shown to be 'rigid' if it were frozen in liquid nitrogen before being inserted into the meniscal tissue, or if it were shot as a high-speed

9

projectile into the meniscus" because these conditions would "differ too dramatically from the conditions contemplated for use of the patented device[,]" the panel held that the use of a cannula to insert the accused device into human tissue was within the context in which the patent contemplated that the claimed invention would be used.  299 F.3d at 1382-1383.  The panel's decision therefore vacated the entry of summary judgment in favor of the defendant, on the basis that the district court's ruling could not rest on the reasoning that the plaintiff's test was invalid. 299 F.3d at 1383.

Here, in contrast, no method of use of the patented product is at issue, and the question is solely whether the accused frames are able to temporarily deflect and subsequently rebound when glass is being inserted at *any* temperature.  Even though the patent for Gemtron's shelf contemplates an ultimate use within the fresh food or freezer compartment of a refrigerator, the asserted claims themselves contain no temperature limitation and the characteristic of relatively resiliency is defined solely with respect to the ability to insert glass into the frame, which could only occur while the shelf is not in use.  The court cannot read a temperature limitation into the claim which is not contained in the claim language.  See, e.g., E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433 (Fed. Cir.) ("It is entirely proper to use the specification to interpret what the patentee meant by a word or phrase in the claim. . . .  But this is not to be confused with adding an extraneous limitation appearing in the specification, which is improper") (citation omitted), cert. denied, 488 U.S. 986, 109 S.Ct. 542 (1988).[3]

_____

[3]Of course, the time for claim construction has already passed.  However, it is noted that at the relevant time, Saint-Gobain did not argue that the court should construe the term "relatively resilient" with reference to any temperature limitation.  See Saint-Gobain's *Markman* Brief (docket no. 57) at 4 (urging a construction of "relatively resilient" as "the end edge portion
(continued...)

Saint-Gobain has not shown or even argued that its frames do not temporarily deflect when glass is being inserted at the temperatures used by Miedema in his tests.  Saint-Gobain also does not argue that its frames do not subsequently rebound after the glass is inserted.   Moreover, Saint-Gobain has not argued that its shelves do not have all of the other limitations of claims 23-30 of the '573 patent.  The court therefore concludes that Gemtron is entitled to summary judgment as a matter of law that Saint-Gobain's SG1, SG2, and SG3 refrigerator shelves infringe claims 23-30 of the '573 patent.

Finally, it is noted that Saint-Gobain has, in its motion, sought permission to have Dr. Stoll repeat his room temperature testing live for the court.  Gemtron has objected to such a demonstration, arguing that it will add nothing to the court's determination.  Saint-Gobain has also argued that Miedema's own demonstration, provided in a DVD submitted with his affidavit by Gemtron in support of its motion, is entitled to "little weight" because it represents an *ex parte* test.  However, the cases cited by Saint-Gobain as support for this proposition are not on point here.  In re Newman, 782 F.2d 971 (Fed. Cir. 1986) involved testing pursuant to a discovery request under Fed.R.Civ.P. 34.  In addition, Wagoner v. Barger, 463 F.2d 1377 (CCPA 1972) involved a patent which described methods for the manufacture of films at specified temperatures.  Here, there is no specified temperature(s) and the method or process of manufacture is not at issue.  And, in Congoleum Indus., Inc. v. Armstrong Cork Co., 319 F. Supp. 714 (E.D. Pa. 1970), the court held that it was "proper procedure" for the parties to submit as evidence *at trial* the testimony of experts and other witnesses which fully explained their

---

[3](...continued)
is sufficiently flexible to permit the glass in the finished product to be pushed out of the frame and pushed back into the frame").

respective commercial processes (the patents at issue being directed to a process for making chemically embossed foamed vinyl floor coverings) and the test procedures employed.  The court in fact denied the defendant's motion to conduct a series of inter partes tests, concluding that "[s]uch a procedure would simply result in a duplication of effort" which would further delay the trial.  Id. at 716.

It is undoubtedly proper for the court, in a patent case, to view a demonstration of the accused product as evidence.  See Bionx, 299 F.3d at 1383 (district court erred in discounting, as evidence, videotaped demonstration of accused device).  However, it is not appropriate, on summary judgment, to conduct an evidentiary hearing for the purpose of observing the demeanor of a witness in the case.  Willetts v. Ford Motor Co., 583 F.2d 852, 855 (6th Cir. 1978).[4]  The court agrees with Gemtron and concludes that a demonstration – whether live or otherwise[5] – will add nothing here, where it is not the experts' affidavits which are in conflict, but rather the parties' views on the legal relevance of the experts' opinions.  Here, Saint-Gobain has not challenged the finding of Gemtron's expert that glass may be inserted into Saint-Gobain's shelves after the application of heat but without permanently altering them.

---

[4]The court looks to Sixth Circuit precedent in this situation, which involves a procedural matter not unique to patent law.  See Arthur A. Collins, Inc. v. Northern Telecom Ltd., 216 F.3d 1042, 1047-1048 (Fed. Cir. 2000); Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc., 45 F.3d 1550, 1560 n.3 (Fed. Cir. 1995).

[5]In contrast with Gemtron, which has provided the court with a DVD video of Miedema inserting glass into the Saint-Gobain frames, Saint-Gobain has not elected to provide the court with a video demonstration of the testing performed by Dr. Stoll.

## **Conclusion**

Saint-Gobain has, in its motion, demonstrated non-infringement only at a single temperature.  However, the asserted claims do not limit the temperature at which relative resiliency – as construed by the court – is present.  Gemtron has demonstrated that conditions exist under which Saint-Gobain's shelves have the relatively resilient characteristic contained within the construed claims.  Therefore, Saint-Gobain is not entitled to summary judgment of non-infringement, and Gemtron is entitled to summary judgment as a matter of law that Saint-Gobain's SG1, SG2, and SG3 refrigerator shelves infringe claims 23-30 of the '573 patent.

So ordered this 17th day of April, 2006.


 /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge

13