UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SAINT-GOBAIN CORPORATION,

     Plaintiff,

v                                          No. 1:04 cv 387

GEMTRON CORPORATION,

     Defendant.

_____/


<u>ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION</u>

On April 17, 2006, the court issued an Opinion and Order in which it denied a motion for summary judgment of non-infringement by plaintiff Saint-Gobain and granted a motion for summary judgment by defendant Gemtron that Saint-Gobain's SG1, SG2, and SG3 refrigerator shelves infringe certain claims of a patent at issue, owned by Gemtron. The matter is currently before the court on Saint-Gobain's Motion for Reconsideration (docket no. 271).


**<u>Discussion</u>**

W.D. Mich. L.Civ.R. 7.4(a) provides that a movant seeking reconsideration "shall not only demonstrate a palpable defect by which the Court and the parties have been misled, but also show that a different disposition of the case must result from a correction thereof." Saint-Gobain makes only two arguments in support of its motion. The court will therefore limit its reconsideration to these two specific arguments.

First, Saint-Gobain argues that the court incorrectly premised its ruling on Saint-Gobain's

failure to argue that its frames did not temporarily deflect and subsequently rebound when glass

is being inserted at elevated temperatures used by Gemtron's expert in his tests. In support of

reconsideration, Saint-Gobain cites to a portion of its brief filed in opposition to Gemtron's

"Second Motion for Summary Judgment as to Infringement" (docket no. 181 at pp. 4-5), in

which Saint-Gobain argued that a DVD of Gemtron's expert's test using an "altered" (i.e. heated)

Saint-Gobain frame did not show that the frame met the requirements of the construed claims

and that the test was entitled to "little weight" because it was *ex parte.*

In its ruling, the court noted that each party had supported its position by submitting the

affidavit of an expert. In his affidavit, Gemtron's expert, Greg Miedema, stated that he had

tested the Saint-Gobain shelves and that he had been able to snap glass into the shelves by

pressing the glass against a finger, deflecting the finger until the glass snapped past it. Miedema

also stated that the finger rebounded, leaving the glass piece entirely within the glass-receiving

channel. Declaration of Greg Miedema (docket no. 158), ¶ 7.[1] Saint-Gobain, however, did not

factually challenge the results of the testing performed by Miedema; instead, Saint-Gobain

merely argued that Miedema's testing was "bogus" simply because it involved heating the frame

before inserting the glass. Reply in Support of Plaintiff Saint-Gobain's Motion for Summary

Judgment of Non-Infringement Based Upon the Test Set Forth in the Court's October 25, 2005

Opinion and Order on Motions for Summary Judgment (docket no. 170) at 1; Further Reply in

Support of Plaintiff Saint-Gobain's Motion for Summary Judgment of Non-Infringement Based

Upon the Test Set Forth in the Court's October 25, 2005 Opinion and Order on Motions for

---

[1]Although the court in its ruling noted that Gemtron had provided the court with a DVD of Miedema inserting glass into the Saint-Gobain frames, the court viewed the DVD solely for demonstrative purposes.

Summary Judgment (docket no. 173) at 1.  Saint-Gobain's arguments indicated that it was the legal relevance of the application of heat which Saint-Gobain disputed, not the actual results of the tests performed by Miedema.  To defeat Gemtron's motion, Saint-Gobain was required to show that a genuine factual issue remained for trial.  Saint-Gobain failed to do so and therefore the court properly granted Gemtron's motion on the issue of infringement.

The second argument Saint-Gobain makes in support of its motion for reconsideration is that the court "misapplied" the holding of High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1555 (Fed. Cir. 1995).  According to Saint-Gobain, High Tech stands for the proposition that a patentee is not permitted to "alter" an accused device in order to show infringement.

The patent in High Tech involved a functional device – a endoscopic optical device – and a patent claim which recited a camera as being "rotatably coupled" to its housing.  The claim also recited that an objective element would be "coupled" to the housing and "arranged to focus an image of a target upon said camera."  49 F.3d at 1553.  In ruling on a motion for preliminary injunction, the district court found that the patentee had made a clear showing that the defendant's device infringed the relevant claim of the patent because it could be rotated within its housing when two set screws were loosened.  The Federal Circuit disagreed that the patentee had shown that it was likely to succeed, because the record provided no reason to disregard the screws and the patentee had offered no evidence that any user of the defendant's device had loosened or removed the set screws before or during actual use.  49 F.3d at 1556.  The decision acknowledged, however, that

if a device is designed to be altered or assembled before operation, the

3

manufacturer may be held liable for infringement if the device, as altered or assembled, infringes a patent.

High Tech, 49 F.3d at 1556.

As this court noted in its April 17, 2006 decision, the relevant characteristic of Gemtron's patent is defined in terms of the time the glass is inserted into the frame but not with reference to any particular temperature.  The function of the shelf is not at issue, but rather the resilience of the frame at the time the glass is inserted.  The relevant claim language, properly construed, contains no temperature limitation.  Moreover, Saint-Gobain has not disputed that its shelves are made from a thermoplastic material, which is by definition capable of being repeatedly reheated and reshaped without losing its characteristics.  See Oxford English Dictionary Online, (2d ed. 1989), http://dictionary.oed.com (defining "thermoplastic" as "Becoming soft when heated and rigid when allowed to cool, and capable of being repeatedly reheated and reshaped without loss of properties; made of such a substance").  In summary, nothing in the High Tech case compels a different result in this case.

**Motion denied.**

So ordered this 25th day of April, 2006.


 /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge

4