UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEMTRON CORPORATION,

    Plaintiff,

-vs-

                                        Case No. 1:04-0387
                                        Hon:  AVERN COHN

SAINT-GOBAIN CORPORATION,

    Defendant.
_____/

**MEMORANDUM AND ORDER DENYING
MOTION FOR SUMMARY JUDGMENT ON ISSUE
OF VALIDITY (OBVIOUSNESS)**

I.

This is a patent case.  The patent-in-suit, U.S. Patent No. 6,679,573B2 (the '573 Patent) covers a Refrigerator Shelf.  The claim-in-suit, Claim 23 reads:

23.  A refrigerator shelf comprising:

    a.    a one-piece open frame made of substantially homogenous polymeric/copolymeric molded synthetic material and

    b.    a piece of glass closing an opening defined by said frame;

    c.    said open frame having opposite substantially parallel side frame portions and opposite substantially parallel front and rear frame portions;

    d.    said glass piece having opposite substantially parallel side edges and opposite substantially parallel front and rear edges;

    e.    said side, front and rear frame portions being

        substantially contiguous to said respective side, front and rear edges;

f.    each of said side frame portions being defined by

        I.    an upper wall,

        ii.    a side wall depending from each upper wall and

        iii.    a lower wall projecting from its side wall toward an opposite side wall

        iv.    with the opposing lower walls being spaced from each other and each defining with an associated upper wall a glass piece side edge-receiving channel, each upper wall and lower wall having a terminal free edge,

g.    said glass piece side edges being spaced a predetermined distance from each other,

h.    said upper wall terminal free edges being spaced a predetermined distance from each other,

I.    said lower wall terminal free edges being spaced a predetermined distance from each other,

j.    the predetermined distance of the glass piece side edges being appreciably greater than the predetermined distance of said upper wall edges and only slightly greater than the predetermined distance between said lower wall terminal free edges whereby said glass piece side edges are captively retained in said glass piece side edge-receiving channels, and

k.    at least one lower wall of at least one of said front and rear frame portions <u>including a relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap-secure one of said glass piece front and rear edges in the glass piece edge-receiving channel of said at least one front and rear frame portion</u> (emphasis added).

The critical element of the claim is emphasized above and/or in the Order on Claim

Construction filed October 3, 2005 as follows:

> . . .the relevant claim language: *relatively resilient end edge portion which temporarily deflects and subsequently rebounds to snap secure* as follows: the end edge portion is sufficiently resilient that it contemporarily deflect and subsequently rebounds when glass is being inserted into the frame.

This interpretation is elaborated on in the Opinion and Order on Parties' Renewed Motion for Partial Summary Judgment filed April 17, 2006 as follows:

> . . . the asserted claims do not limit the temperature at which relative resiliency is present. . . .

The accused device is a refrigeration shelf manufactured in Mexico and sold in the United States, the SG16. Gemtron says it consists essentially of a shelf consisting of a glass panel snap-secured into an injection molded plastic frame.

Now before the Court is Saint-Gobain's <u>KSR</u>[1]-Based Motion for Summary Judgment of Patent Invalidity Based on Obviousness under 35 U.S.C. §103.[2]  For the reasons which follow the motion is DENIED.

II.

This case has a long and convoluted history.  Significant milestones follow:

- Case filed - June 10, 2004

- Claim construction decision - October 3, 2005

---

[1] <u>KSR Int'l Co. v. Teleflex, Inc.</u>, ___ U.S. ___, 127 S.Ct. 1727, 167 L.Ed. 2d 705, (2007).

[2] Section 103 states that:
A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.
35 U.S.C. § 103(a).

3

- Cross-motions for summary judgment on issue of infringement (relating to models SG1, SG2 and SG3) denied - October 24, 2005

- Summary judgment of infringement by SG1, SG2 and SG3 granted - April 17, 2006

- Case reassigned (infringement of SG16 still to be adjudicated) - December 16, 2006

- Summary judgment of invalidity on issue of written description denied - May 8, 2007

- Motion for summary judgment on issue of obviousness filed - June 16, 2007

- Cross-motions for summary judgment of infringement denied without prejudice - August 16, 2007

- Trial set for January 14, 2008 - August 16, 2007

III.

A.

There is no dispute that the three (3) elements of the SG16, a glass panel, a plastic frame, and snap-securing one member of a device to another member of a device are old in the art. What is not old in the art is snap-securing a glass panel to a plastic frame in a refrigeration shelf in the fashion called for by Claim 23.

1.

The issue here is the application of the principles encompassed by the following statement in KSR, 127 S.Ct. 1740-41:

> The principles underlying these cases are instructive when the question is whether a patent claiming the combination of elements of prior art is obvious. When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, §103 likely bars its patentability. For the

4

> same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill. . . . [A] court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions.
>
> Following these principles may be more difficult in other cases than it is here because the claimed subject matter may involve more than the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement. Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue. To facilitate review, this analysis should be made explicit. See In re Kahn, 441 F.3d 977, 988 (C.A. Fed. 2006) ("[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness"). As our precedents make clear, however, the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ.

2.

KSR did not change the rule that conclusory evidence is not enough to meet the burden of establishing obviousness by the burden of clear and convincing evidence. NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282 (Fed. Cir. 2005). As explained in Omegaflex v. Parker Hanifin Corporation, No. 2007-1044, 2007 WL 1733228, *2 (Fed. Cir. June 18, 2007):

> The Supreme Court recently explained that "a patent composed of several elements is not proved obvious merely by

5

demonstrating that each of its elements was, independently, known in the prior art." KSR Int'l Co. v. Teleflex, Inc., ___ US ___, ____, 127 S.Ct. 1727, 1741, 167 LEd2d 705, ___ (2007). "[I]t can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." Id. In identifying such a "reason," the Court cautioned that "the analysis need not seek out precise teachings [in the prior art] directed to the specific subject matter of the challenged claim."

* * *

Rather, courts must also "look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art." KSR Int'l, 127 S.Ct. at 1740-41; see also DyStar, 464 F.3d at 1366-67 (holding that a reason to combine may come from "the knowledge of one of ordinary skill in the art," "the nature of the problem to be solved," or "common knowledge and common sense") (internal quotations and citations omitted).

See PBI Performance Products, Inc. v. Norfab Corp., ___ F. Supp. 2d ___, 2007 WL 2464507 (E.D. Pa. 2007), for an example of the depth of analysis called for by KSR.

3.

Importantly, what Saint-Gobain asks for is summary judgment. The rule is clear:

The rules of summary judgment require that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is proper when a reasonable trier of fact could not find other than for the movant, when drawing all reasonable factual inferences in favor of the non-movant, and with the due consideration of the burden of proof.

* * *

[R]elevant however, [is] the fundamental premise of a grant of summary judgment is that no reasonable jury could find other

6

than in favor of the movant, when all reasonable factual inferences are drawn. . .

Gemmy Ind. Corp. v. Chrisha Creations Ltd., 452 F.3d 1353, 1358-59 (Fed. Cir. 2006) (citations omitted).

B.

The task of determining obviousness, and hence validity in the context of the difference between the parties requires the Court to

- determine the scope and context of the prior art
- determine the differences between the claimed invention and the prior art
- determine the level of ordinary skill in the art
- determine if there is any objective evidence

After this is done the Court must then look at the invention and

- determine if it displays predictable use of the prior art elements according to their established functions
- determine if it is the likely product not of innovation but of ordinary skill and common sense

Finally, the Court must make a judgment as to whether or not the invention is obvious.[3]

C.

Here the essential question to be decided is whether, considering the generic knowledge in the art of snap-securing, there is more than a predictable difference between snap-securing one member to another member in a device by spreading apart the snap

---

[3] See Graham v. John Deere Co. Of Kan. City, 383 U.S. 1 (1966) and *Examination Guidelines For Determining Obviousness* [etc], 72 Fed. Reg. No. 195 (Oct. 10, 2007).

device and having it rebound (temporarily deflecting and subsequently rebounding) or securing a flat rigid member to a flexible member in the fashion called for by Claim 23.

IV.

A.

1.

To make its case for obviousness, Saint-Gobain proffers the declaration of Dr. Henry W. Stoll.

Stoll, after describing the prior art relating to refrigerator shelves, and more particularly refrigerator shelves consisting of glass panels and injection molded plastic frames, goes on to state:

> 16. The concept of "snap-fitting" was known in the prior art and, as in the '573 patent, was used in order to achieve a low cost assembly. *See* Muccio, E., *Plastic Part Technology* (1991) at 271, which notes that the "snap fit" "can be incorporated in many plastic part design systems . . . [and] eliminate[s] mechanical fasteners and adhesives, thus allowing for a lower cost assembly.
>
> 17. United States Patent 5,136,982[4] (the '982 patent) specifically discloses this "snap-secure" or "snap-assembly" fit. See col. 4, ll. 19-22 ("The upper terminal end portion 46 and the tongues 47, 48 are *snap secured* . . . by a pair of resilient legs 52, 53.") (emphasis added); col. 4, ll. 22-29 ("As the upper terminal end portion 46 and the tongues 47, 48 are forced upwardly into the slot 51, the legs 52, 53 [are] initially *spread apart* but *rebound* under the inherent resiliency of the material (polymeric/copolymeric plastic) of the suspension clip 50 to *snap-secure* and grip [members 31-33 as shown in figures 2-3].") (emphasis added).

---

[4]The '982 patent covers A Watering System For Poultry, Small Animals And The Like.

and concludes

> 18. As of April 16, 2001, one skilled in the art would have known (it would have been obvious) that a glass panel/plastic frame refrigerator shelf could be made by inserting a glass panel into a snap-fit or snap-secure plastic frame.
>
> 19. A glass panel in a refrigerator shelf is an old element. A plastic frame in a refrigerator shelf is also an old element. A snap-fit or snap-secure fit is an old element. The glass panel performs the same function as in the prior art, i.e., it supports the food. The plastic frame performs the same function as in the prior art, i.e., it supports the glass panel. The snap-fit or snap-secure fit performs the same function as in the prior art, i.e., it secures the (non-loaded) glass to its frame. There is no new result. Each element performs as it has in the past.
>
> 20. It is my understanding that Gemtron asserts that (1) the SG16 shelf infringes because, even though the plastic frame is rigid and inflexible, the frame can be modified by sufficient heat to permit the glass to be pushed out of its frame and, after further heating, the glass can be pushed back into its frame, and (2) it is only the push-in and not the push-out that constitutes infringement. However, this heating and subsequent push-in to make a refrigerator shelf was disclosed in the prior art. As set forth in paragraphs 9-10 above, the '740 and '627 patents disclose the making of a refrigerator shelf via the application of "force" to take advantage of the "relative flexibility" of the plastic frame. This would, as I understand Gemtron to assert, involve temporary deflection and subsequent rebound of a portion of the plastic frame. Thus, the prior art discloses what Gemtron asserts is infringement.

2.

Following oral argument in a supplemental brief, Saint-Gobain called the Court's attention to U.S. Patent No. 3,656,493 (the '493 patent), Simulated Leaded Stained Glass, as an example of a glass panel snap-fitted into a plastic frame. The '493 patent is

substantially similar to French patent publication 2,053,627 (the '627 patent), which "relates to the mounting of a glass plate or the like on its frame, such as the mounting of a mirror" referenced by Stoll in his declaration.

B.

In opposition, and to establish a genuine issue over a material fact, Gemtron proffers the declarations of Roger E. Hamilton and Greg Miedema.[5]

1.

a.

Hamilton describes prior art refrigerator shelves none of which track or suggest snap assembly of the glass to the frame, and prior art various snap-securing devices commonly found in plastic parts. He states particularly:

> 31. One of ordinary skill in the art would recognize that the snap-fits taught by Muccio would not be applicable to the refrigeration shelf recited in claim 23. For example, the snap-fits taught by Muccio would not allow snap assembly of the glass to the frame while providing sufficient engagement between the plastic frame and the piece of glass such that the frame would captively retain the piece of glass.
>
> 32. Muccio does not teach or suggest any of the limitations recited in claim 23 of the '573 patent.
>
> * * *
>
> 34. The '982 patent teaches the use of snap features to connect a watering pipe to a suspension system. The snap-assemblies disclosed in the '982 patent are o more relevant to the design of a refrigerator shelf than the snap-fits disclosed in Muccio.

---

[5]Supplemental Declaration of Greg Miedema regarding the Parties' Motions for Summary Judgment filed June 1, 2007.

35. In any event, one of ordinary skill in the art of refrigerator shelf design would not look to a watering system for small animals when designing a refrigerator shelf. Such a watering system is not related to refrigerators, shelving, or kitchen appliances and does not use glass or involve any flat, rigid component analogous to a shelf.

36. The '982 patent does not teach or suggest any of the limitations recited in claim 23 of the '573 patent.

* * *

38. One of ordinary skill in the art of refrigerator shelves before each of the Relevant Dates would not have been motivated to combine these references to design the refrigerator shelf recited in claim 23 of the '573 patent.

b.

1.

Hamilton in distinguishing the '627 patent, and hence the '493 patent, states:

26. Further, one of ordinary skill in the art of refrigerator shelf design would not look to the art to which the '627 patent is directed when designing a refrigerator shelf because the design considerations for mirrors and refrigerator shelves are substantially different. For example, the glass panel of a refrigerator shelf is designed to be oriented horizontally, to support the load of heavy items placed on it, and to transfer this load to a frame. On the other hand, a mirror, such as that described in the '627 patent, typically is oriented vertically, such that the glass does not bear any significant load, and the frame supports only the weight of the glass.

2.

Miedema first describes snap-assembly features in general:

3. Many products incorporate snap-assembly features

> 4. used to attach components of the products to each other. Components to be snap-assembled typically are configured such that one of the components must be pressed past interfering structure on the other component to join the components. Generally, when the components are pressed together, the interfering structure temporarily deflects out of the way, thereby allowing the other component to pass by, and then subsequently rebounds to a position wherein the components are attached to one another.
>
> 4. Two primary considerations in the design of a snap-assembly feature are the ease with which components can be snap-assembled and the resistance to subsequent disassembly of the components. These design considerations are affected by several factors, including, among other things, the material properties of the components, the physical configuration of the components, the dimensions of the components, the desired method of manufacturing the product, and the intended use of the product.

and goes on to describe the specifics of the snap-assembly called for by Claim 23 as follows:

> 6. For example, FIG. 3 of the '573 patent, reproduced below, shows a cross-section of the lower wall or finger 88' that retains the glass panel 35 in channel 100 of the plastic frame. This lower wall or finger is configured with a ramp on the side from which the glass is inserted. When, upon assembly, the glass is pressed against this ramp portion of the lower wall or finger, the forces applied to the ramp tend to deflect the lower wall or finger in such a manner that the glass panel slides past the lower wall or finger and into the glass receiving channel 100. Once the glass has been pressed past the lower wall or finger, the lower wall or finger rebounds to secure the glass panel in the glass receiving channel. The opposite side of the lower wall or finger, however, is configured without such a ramp. As such, pressing the installed glass against the lower wall or finger does not tend to deflect the lower wall or finger in such a manner that the glass can be readily removed from the frame. This geometry facilitates

12

>deflection of the end edge portion of the lower wall or finger when the glass is inserted but resists deflection of the end edge portion of the lower wall or finger after the glass has been inserted.

V.

A.

Saint-Gobain in moving for summary judgment makes clear that it is relying on the first rationale of the Patent Office Guidelines, namely that it is obvious to combine elements known in the prior art according to known methods to yield predictable results. The facts proffered by Saint-Gobain as described above, however, do not support a finding that there is <u>a reason to combine</u> the prior art reference to yield predictable results in the fashion called for by Claim 23. While the prior art displays snap-securing, the references Saint-Gobain relies on are so far different than the snap-securing element of Claim 23 that it cannot be said that nothing more than a "known technique" to a new use is present. Saint-Gobain has not identified a reason for a person of ordinary skill in the art to combine the elements in the prior art in the manner called for by Claim 23. The experts on which Saint-Gobain rely offer only conclusionary opinions. Gemtron's experts clearly establish that there are disputed issues of fact regarding how a person of ordinary skill would look at the prior art elements.

Claim 23 calls for the edge portion of the plastic frame to move out of the way and then come back to snap the glass; the snap feature is integrated with the frame. Nothing in the prior art suggests this. Gemtron's Supplemental Opposition To Saint-Gobain's Motion For Summary Judgment Of Patent Invalidity Based On Obviousness clearly supports this conclusion.

B.

Courts have continued to hold after <u>KSR</u> that narrow improvements in crowded arts are patentable. <u>See</u>, <u>e.g.</u>, <u>Haberman v. Gerber Products Co</u>., 2007 U.S. Dist. LEXIS

14

78937, at *5-9 (W.D. Wis. Oct. 18, 2007) (denying summary judgment as to obviousness for a patent for a "drinks container" in a crowded art of containers for dispensing liquids); Caponey v. Ada Enterprises, Inc., 511 F. Supp. 2d 624, 627-29 (D.S.C. 2007) (denying summary judgment as to obviousness for a patent directed to a method of removing refuse in a crowded art of dumping and garbage collection apparatuses).  The KSR analysis, as elaborated in the PTO Guidelines, applies to any invention, whether pioneering or a narrow improvement.  Whatever the invention, the KSR analysis must be applied to the specific elements of the claim at issue in light of the relevant prior art.  Saint-Gobain has failed to do this here.

VI.

Denial of Saint-Gobain's motion is not an adjudication of validity.  What the denial says is that at this juncture of the case it is for a jury to decide.  KSR does not automatically call for a ruling of invalidity unless the patent challenged is a major development in the art.  Contrary to Saint-Gobain's view, narrow improvements in a crowded art, as discussed above, continue to be patentable.

SO ORDERED.

Dated:  December 6, 2007            s/Avern Cohn
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 6, 2007, by electronic and/or ordinary mail.

                                     s/Julie Owens
                                    Case Manager, (313) 234-5160