UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GEMTRON CORPORATION,

    Plaintiff,

-vs-

SAINT-GOBAIN CORPORATION,

    Defendant.

_____/

Case No. 1:04-0387
Hon:  AVERN COHN

**MEMORANDUM AND ORDER
RELATING TO GEMTRON'S STATEMENT OF DAMAGES**

This is the damages phase of a patent case.  Defendant Saint-Gobain Corporation ("Saint-Gobain") has been found guilty of infringing United States Patent Number 6,679,573, which is owned by Plaintiff Gemtron Corporation ("Gemtron") and directed generally to a refrigerator shelf.  The parties have agreed that Gemtron is entitled to money damages in the amount of a reasonable royalty rate of 5.99% on Saint-Gobain's sale of infringing shelves within the United States.

For the reasons stated on the record at the hearing of July 18, 2008, and the reasons further stated below, there appears to be a factual issue surrounding the importation of infringing items into the United States that requires further proceedings. However, there is no basis for the inclusion in the compensation base of some items listed in Gemtron's damages report, and these items will be excluded as a matter of law.

A.

1

Gemtron and Saint-Gobain disagree on the amount of sales that should be included in the compensation base.  Following modest revisions to Gemtron's initial damages report, the position of each party may be summarized as follows:

| Category | Gemtron | Saint-Gobain |
|---|---|---|
| Sales Summary Report | $20,566,183 | $18,669,000 |
| Additional Identified Sales | $10,583,291 | $5,134,786 |
| Unidentified Part Numbers | $2,936,629 | $810,321 |
| Invoices Without Part Numbers | $1,638,685 | $374 |
| **Total** | $35,724,788 | $24,614,621 |
| **Damages at 5.99% Royalty Rate** | $2,139,914 | $1,474,416 |

The disagreement stems primarily from two issues: (1) Saint-Gobain says that not all infringing units identified by Gemtron were imported into the United States, and (2) Saint-Gobain says that Gemtron has impermissibly included sales of some related products, such as glass panels and molds.[1]

---

[1] Saint-Gobain also objected to the inclusion of some items that are entirely unrelated to the sale of infringing shelves.  Gemtron has removed at least some of these items, such as a Volkswagen sedan, oven doors, humidity control accessories, and a non-infringing "tuckaway shelf."

B.

The Patent Act requires that damages for infringement should be in an amount "no less than a reasonable royalty rate for the use of the invention by the infringer." 35 U.S.C. § 284; see also Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1546 (Fed. Cir. 1995) (*en banc*). A district court also has discretion to award damages in excess of a reasonable royalty in order to ensure that the patent owner is adequately compensated for its monetary loss. Stickle v. Heublein, Inc., 716 F.2d 1550, 1563 (Fed. Cir. 1983).

The patentee bears the burden of proving damages by a preponderance of the evidence. Vulcan Eng'g Co, Inc. v. Fata Aluminum, Inc., 278 F.3d 1366, 1376 (Fed. Cir. 2002). Proof of damages must be supported by relevant evidence in the record. Unisplay, S.A. v. Am. Elec. Sign Co., Inc., 69 F.3d 512 (Fed. Cir. 1995). However, where damages are uncertain due to an infringing party's failure to keep or preserve adequate records, the uncertainty must be resolved against the infringer. See, e.g., Beatrice Foods Co. v. New England Printing & Lithographing Co., 899 F.2d 1171, 1175 (Fed. Cir. 1990) ("An infringer can not destroy the evidence of the extent of its wrongdoing, and limit its liability to that which it failed to destroy.").

C.

Saint-Gobain first objects to Gemtron's damages report on the grounds that it incorrectly assumes that 100% of the refrigerator shelves sold by Saint-Gobain in Mexico were incorporated into refrigerators exported to the United States. Saint-Gobain proffers a letter from counsel to Whirlpool, a refrigerator manufacturer, and an affidavit from an employee of Mabe, another such manufacturer, showing that this is not the case. The Whirlpool letter states (without providing any supporting documentation) that,

between 2004 and 2008, 61% to 68% of the infringing shelves sold to Whirlpool in any given year were ultimately imported into the United States.[2]  The Mabe employee provides absolute numbers of units rather than percentage figures, but the upshot is the same: not all infringing shelves purchased from Saint-Gobain by Mabe are imported into the United States.[3]

Gemtron responds that the Whirlpool letter and Mabe affidavit are not admissible evidence.  Further, Gemtron says that Saint-Gobain's analysis is flawed insofar as it assumes that the percentage of units imported into the United States corresponds directly to the percentage of revenues derived from shelves imported into the United States.  The number of units and amount of revenues may not correspond, since different models may sell for different prices, and Saint-Gobain's analysis does not separately account for different models.  Finally, Gemtron suggests that Saint-Gobain's numbers are implausible on their face because Saint-Gobain has previously represented that the vast majority of the shelves it manufactures in Mexico are ultimately imported into the United States.

While Gemtron raises legitimate questions regarding Saint-Gobain's damages analysis, ultimately it is Gemtron's burden to prove its damages.  There is no allegation that Saint-Gobain has failed to keep or preserve adequate records of its infringing activities (the relevant records are in the possession of third-party refrigerator

---

[2] In his damages analysis, Saint-Gobain's expert uses a weighted average of 63.5%.

[3] Gemtron has not proffered any evidence as to the percentage of infringing shelves that are ultimately imported into the United States and apparently has not attempted to take discovery from either Whirlpool or Mabe.

manufacturers), so the line of cases that resolves uncertainty against infringers who have failed to proffer adequate records is inapposite.

Further proceedings are necessary to resolve this dispute. After allowing the parties time to develop the evidentiary record, the Court will schedule a hearing to determine whether there is a genuine issue of material fact as to the importation issue. If the issue cannot be resolved by summary judgment, a trial will be necessary.

D.

Saint-Gobain further objects to Gemtron's damages report because it includes items such as molding and glass panels – items that are of course not shelves but are in some way related to the sale of shelves.

Gemtron responds that the sale of these non-infringing items is related to Saint-Gobain's infringing activities: "The cost of the glass used in an infringing shelf is part of the cost of the shelf. Gemtron is harmed in exactly the same way if, instead of paying for an assembled infringing shelf, the customer pays for the underlying components in the infringing products separately. It is also undisputed that, when a refrigerator manufacturer purchases a refrigerator shelf, the manufacturer pays for the cost of the mold used to make the plastic frames for the shelves and then pays an amount for each shelf that is manufactured with the mold." Gemtron's Reply Brief at 11.

Saint-Gobain first replies that the glass panels are not made or sold with a plastic frame nor as a replacement part for a shelf with a plastic frame. Because Gemtron has submitted no evidence to the contrary, the glass panels will be excluded from the compensation base as a matter of law.

5

Saint-Gobain also argues that the molding should not be included as part of the royalty base because it does not fit within the "entire market value rule."

> The entire market value rule has typically been applied to include in the compensation base unpatented components of a device when the unpatented and patented components are physically part of the same machine, or they together constituted a functional unit. The rule has been extended to allow inclusion of physically separate unpatented components normally sold with the patented components. However, in such cases, the unpatented and patented components together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit.

Rite-Hite, 56 F.3d at 1549-50 (citations omitted). Here, the molding and the infringing shelves are not part of a "single assembly" or "functional unit" and thus do not fit within the entire market rule. It is not enough that the molding "derives its purpose" from the shelves, as Gemtron suggests in its brief. Therefore the molding will be excluded from the compensation base as a matter of law.

E.

To sum up, the glass panels and molding that Gemtron lists in its damages report are excluded from the compensation base. Further development of the evidentiary record is necessary to resolve the issue of importation of the shelves into the United States.

SO ORDERED.


Dated:  July 22, 2008                           s/Avern Cohn
                                                AVERN COHN
                                                UNITED STATES DISTRICT JUDGE

**04-387 Gemtron Corp. v. St. Gobain Corp.**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 22, 2008, by electronic and/or ordinary mail.

                                                s/Julie Owens
                                            Case Manager, (313) 234-5160